The next case on the calendar is Montefiore Medical Center v. Local 272. Thank you. Good morning, Your Honors. Jane Lauer Barker of Pitta LLP. I'm with my colleague Andrew Midgen on behalf of Defendant Appellants, Local 272 Welfare Fund, and Mark Goodman, Local 272 Welfare Fund Manager. May it please the Court. The order of the district court should be reversed and summary judgment entered in favor of the fund because the district court adopted an incorrect and unreasonable interpretation of a provision of the fund's summary plan description that requires the fund to pay out-of-network providers the highest amount that the fund would pay to any in-network provider. Suppose your client, suppose the person had gone to an in-network provider that charged as much as Montefiore did, would the fund have had to pay that? Yes, Your Honor, because that would be the in-network. So then why should, if he chose to go to Montefiore, get any less? I mean, the language says in-network provider. If he'd gone to an in-network provider that had cost as much as Montefiore, why is it different if he went to Montefiore? Because Montefiore, as an out-of-network provider, does not get the benefit of the highest amount. Of the highest amount of an in-network provider. You are reading into that in the vicinity, but is there anything that says that a sick person has to go to an in-network provider in the vicinity? No, Your Honor. The way the fund reads that provision is to grant the fund the leeway to pick the in-network provider whose rate will be used for determining the maximum rate. The fund reads it to give the fund the leeway to decide who the network provider is. So by your construction, the fund could also choose the least expensive in-network provider as the comparator, right? They could choose any network provider, any in-network provider. The fund could choose the in-network provider that pays the least amount. As I understand the record, that's not what you do. You compare the services to some geographically proximate network provider. Yes. The fund picks the in-network provider by looking at the geographic location, but taking into account whether the services are the same as the services provided by the out-of-network provider, which they were in this case. And even the doctors were very similar. Can the fund tell a patient which in-network provider that patient should go to? No, Your Honor. No. So then why can the fund tell Montefiore which in-network provider is the one that is relevant? If a patient could go elsewhere and charge that, where in the language of this is there something that says that Montefiore should be treated differently with respect to in-network providers than the patients that are choosing? Well, the language requires an interpretation, Your Honor, and the fund has the responsibility for interpreting that language. The language says that the— Read me the precise language. Thank you, Your Honor. In addition to your normal copay and coinsurance, you must also pay any difference between the amount that an in-network provider charges—excuse me, the amount that an out-of-network provider charges and the maximum amount the plan would have paid to an in-network provider for the same service. The maximum amount that the fund would have paid to an in-network provider. The patient, instead of going to Montefiore, goes to an in-network provider which is not in the vicinity, which he has a right to do and you cannot keep it from doing, which is the amount that Montefiore claimed, that larger amount. You have just read to me language which says that that is what you will pay. And I don't know how you can—you know, it may be a silly contract, but I've read it and re-read it and re-read it trying to read it your way, and I've got to say, I have— If you read it that way, you would also have to read it to say that you can keep the patient from going there. Well, I actually think that the funds—the way that the fund approaches this contract seems to me quite reasonable. That, you know, where there are two, an in-network and an out-of-network, it seems to make sense to me that you would look to one that's in the vicinity, close by because of, you know, pricing, et cetera, and that you would look to see the precise services that are provided to see that there are, you know, to find some equivalency there. The problem is that language of the contract doesn't allow you to do that, in my view. And to the extent that it is ambiguous, the content that you provide is substantial. I mean, you provide, in the way that you've described it, concepts that are nowhere to be found in the contract, as far as I can tell. Well, I think that because the plan gives the fund the right and the authority to interpret the plan document, that when it says an in-network service provider, we would submit that that allows the fund to determine the in-network service provider whose rates will be used to pay the out-of-network service provider. What does a beneficiary know, therefore, when they enter into this agreement, about what they're going to pay? They don't know because the beneficiary doesn't understand which hospital would have the highest in-network rates because the hospital charges and rates are not transparent. If they don't know what they're going to pay, then what is the purpose of the summary plan? The purpose is to tell them that if you go to an out-of-network hospital, if you choose to go to an out-of-network hospital, you're going to be responsible for more, you'll have a greater financial obligation. It doesn't tell them what that greater financial obligation will be because the patient himself won't know, and the fund doesn't necessarily know what the in-network hospital charges will be for that particular out-of-network hospital. How easy is it for you to change the contract to do what you want it to? Yes, it can be done, Your Honor. This has never happened before, and I'm going to ask opposing counsel about that. It's rather remarkable if it has never happened before, but you say so, and I'll take your word for it. It may be that you're stuck with extra expenses in this case and in a few cases that are going on, but if a language seems as clear, isn't the answer for you to just change the language and make it say what is a perfectly sensible arrangement? Then you'd have to say what is the visinage, you know? Is it New York City? Is it Brooklyn? Is it whatever? You'd have to give something that tells you what the one is, but you can do that. Yes, Your Honor, the plan document can be changed, but what I would say with respect to this is that the rejection of the fund's interpretation, which we submit that the language is susceptible to the fund's interpretation, resulted in the fund likely incurring substantial expenses that would be unexpected because this has not been interpreted the way that the district court interpreted, and basically results in a windfall to Montefiore, Your Honor. How many in-network providers do you have? Well, that I would say probably most of the general hospitals in New York City would be in Magna Cares Network. There are a few. Montefiore is out of network, and at one time Beth Israel, St. Luke's, and the New York Eye Ear would be out of network, and hospitals outside of New York City are out of network. So the in-network providers are all in New York City, or are there also some in-network in New Jersey? All the in-network providers, I believe, are in New York City, but I- But you're not positive? I'm not positive. Just interesting. Thank you. Thank you. Good morning, Your Honors. May it please the Court. I'm John Martin. On behalf of Montefiore Medical Center with me is Mark Sittenreich, who assisted me on the brief. Your Honors, put simply, this Court should affirm the thorough and well-reasoned opinions issued by the two courts below. First, Magistrate Judge Netburn and then District Court Judge Ronnie Abrams both agreed that the language in the funds plan is clear as a bell. How far do you go to find the relevant in-network provider? If there were an in-network provider in Hong Kong, by some strange chance, that charged the most huge amount because expenses in Hong Kong are enormous, would that be what Montefiore could decide to charge? Well, what Montefiore can get paid is limited by what they bill. Yes. So- And in billing, and you know, there's a fair amount of room that people at Montefiore said, Look at this thing, the most peculiar language in a contract. There's the Guido Calabresi Hospital in Hong Kong, which charges enormous amounts. We'll charge that for all sorts of things. Montefiore can't do that because they're required by law to charge everybody the same. So they can't establish one rate for employees of the fund and inflate it, as you said. They would not be allowed to do that. Are you saying that this contract does make the maximum that they get, the maximum that could have been gotten, charged for the same services by an in-network provider, wherever such a person, that provider would be? That's how the plan is written. Now, the time they wrote this plan, and at this time, they knew full well that there was a limited network, primarily within the state of New York, possibly in New Jersey. But they chose the language. I mean, we talk about it as a contract. It's not a contract. This was dictated to the fund members. They wrote it. They can change it. And that was an excellent point I think you made and that we've been making consistently here, that they control this language. That if they want this to read the way they say it should read, take the word maximum out. Why has this never come up before? That's an interesting question. There's nothing in the record. If there's nothing in the record, then I'm not sure I want the answer. Well, as counsel said in answer to one of the previous questions, virtually every hospital in New York is in the Magna Care Network. Montefiore used to be in the Magna Care Network. All the major hospitals are in the network. And the reason that Montefiore is no longer in the network is because they had a dispute over nonpayment of funds, which is the subject of another case that's been before this court a few times. And as a result of that dispute, Montefiore suspended the network privileges of 272. So with respect to hospitals, it would be very, very tough to find an out-of-network hospital right now in the funds plan. Maybe sometime in the past. I don't know if the plan language has changed over time. But I know right now Montefiore is probably one of very, very few out-of-network hospitals. Now, there are out-of-network doctors. But that's a different thing because a doctor doesn't have the same interest. If a doctor gets paid from the fund $100 less than he's supposed to for an office visit, he's not going to bring a claim in federal court under ERISA and spend thousands and thousands of dollars to recoup that money. So doctors take whatever they can get. Plus, the doctors are then free to say to their patient, you have to pay the balance. Montefiore recognizes in this case, we could have sued every single patient for the full balance. But these are minimum wage, generally low wage workers who don't have assets. A, Montefiore has no desire. Montefiore is a community charitable hospital, has no desire to destroy these people's lives with debt. Plus, there's not a reasonable likelihood they would recover. So- Isn't it often or usual in these sorts of arrangements that if you're an in-network provider, you might negotiate to accept a lower amount than you contracted for when a dispute arises with the plan? I mean, as I understand it, they're saying it's plausible to read this maximum amount to refer to. We're assuring the beneficiary you get the maximum, the contractually agreed upon amount and not a lower amount. But there's no evidence, not a shred, and they had every opportunity to put it in, that that is a real situation. They never provided an example. Here's a provider. We have a negotiated rate for, let's say, an appendectomy, an emergency appendectomy, and it's $10,000. But sometimes we only pay them $5,000. And so that's what this is about. First of all, no evidence that that ever happened. Second of all, if I'm a beneficiary reading this plan, that's what I'm supposed to read into it? Because this is supposed to be- I understand how would a beneficiary read this, and I think you have a very good plain language argument. But I think they may have a pretty good argument. I'm not seeing really the sense, the economic, the sense of the arrangement by which they would have agreed to pay the maximum amount they would have paid any in-network provider, and you're going to go find the maximum amount, even if it's the Calabresi Hospital. Well, that's a good point. The reality of the situation is that they do not pay-they get a discount-I'm sorry-for every in-network provider. I just wonder if the language were to be read that way, shouldn't it say the in-network provider rather than any in-network provider? That is, if it goes to the maximum amount that is paid, it should be the in-network provider, not any. Any suggests something very different. That was my problem with that language. Right. It's open-ended. And what it really should say is an in-network provider selected by the fund. I want to return to the question, which I'll ask the other side. Who wrote this language? The fund itself wrote the language. If there were-I'm not sure that there is a preferentum argument-the preferentum argument runs the other way. That is, any ambiguity is read against the person who wrote it. Absolutely, and it's particularly a powerful argument in this case because, as I said, this was not a contract. This was not a negotiation. The beneficiaries didn't agree to this. This was drafted by the fund and entered-the beneficiaries are bound by it without ever having negotiated it. So the rule of contra profitorum is particularly appropriate here. In addition, it's an insurance-it's a health insurance issue, and health insurance contracts are construed in favor of the beneficiary, not in favor of the payer. So that rule is particularly appropriate here. But there is no ambiguity here because the word maximum resolves any ambiguity. If you take maximum out, I grant, and Judge Ramos, you made a good point, that their approach is one that some other funds use, and if they had written their plan correctly, they would be free to use that approach. There's lots of different ways to cover out-of-network benefits. In fact, the Affordable Care Act, which doesn't yet apply to the fund, gives you a number of choices for emergency services, and one of the choices the Affordable Care Act allows is the median of what you would pay an in-network provider. So that says you go out and list them all, and, you know, you figure out the mathematical median, and that's what you pay. Is it usual to ever contract for the maximum any in-network provider would provide? Is it usual? I have to honestly say I haven't read enough of these benefit programs to know what the usual thing is, but let me explain why it's reasonable. And Judge Calabresi made this point quite well, I think. If the hospital's willing to pay $10,000 for an appendectomy if you get it at NYU Langone, why is it unreasonable for them to be willing to pay $10,000 if you get the same appendectomy at Montefiore? Why? It just makes perfect sense. The fund is saying, look, we're not going to reimburse you at whatever Montefiore bills, because who knows, they could bill $50,000, but we will reimburse you at a rate that we would have reimbursed another hospital. And here they clarify it by saying it's the maximum. It could be the median. They could have said the lowest, or they could have said one that we pick, but they chose the word maximum, and they have to live with it. Thank you. Just a couple points, Your Honor. In terms of the contra proferentum rule, I think that would only apply if you could not discern the intent of the plan document from other areas, and I think it's clear that the intent of this is to preserve the assets generally for the beneficiaries, and by interpreting it the way the district court interpreted this provision, we would be paying potentially a rate that was an in-network hospital in Hong Kong, whose charges were much greater than what the in-network charge that would be accepted if they were in-network. Can you determine who are in-network hospitals? Yes, we can, because we have a network. So you can choose to exclude any hospital whose rate you think is inappropriate, can't you? Near or far. You could excuse the rule out NYU Langone if they charge too much, or the Guido Calabresi Hospital in Hong Kong, couldn't you? If that were what the plan provided, yes. Well, I mean, you decide who are in-network hospitals, so if you think that there's one that would charge more than you are willing to pay, you can say sorry, you're no longer an in-network hospital. Yes, we could, but that's why the plan has interpreted it, to provide that they will choose a hospital that's in the locality with the same services and pay the maximum rate. But you can also choose to say that the only in-network hospitals are those in the locality, if you want. That's right, Your Honor. We could. We are really talking about a period of time and amounts of money that would dissipate the funds in this case, which would be against the purposes of the plan. Thank you very much. Thank you both. Nicely argued.